**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SHERMAN WAGNER,

      Petitioner,

                                  CASE NO. 2:06-CV-10514

v.                              HONORABLE VICTORIA A. ROBERTS
                              UNITED STATES DISTRICT JUDGE

WILLIE O. SMITH,

      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Sherman Wagner, ("Petitioner"), presently confined at the Chippewa Correctional

Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to

28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for first-

degree felony murder, M.C.L.A. 750.316; first-degree premeditated murder, M.C.L.A.

750.316; armed robbery, M.C.L.A. 750.529; assault with intent to commit murder,

M.C.L.A. 750.83; and felony-firearm, M.C.L.A. 750.227b. For the reasons stated below,

the application for writ of habeas corpus is **DENIED.**

### I. Background

Petitioner was convicted of the above charges following a jury trial in the Wayne

County Circuit Court. This Court recites verbatim the relevant facts regarding

Petitioner's conviction from the Michigan Court of Appeals' opinion affirming his

conviction, which are presumed correct on habeas review. *See Long v. Stovall,* 450 F.

Supp. 2d 746, 749 (E.D. Mich. 2006):

> According to the testimony at trial, Kiley Moss and Thelyus Johnson arranged to purchase drugs from Antonio Edwards in Detroit. The two men took a bus from Lansing to Detroit, where Edwards met them. Edwards did not immediately have the drugs available. Eventually, Edwards and Sol Bryant took the men to a house where they met Deshawn Lucci. The men began to set up a scale to weigh the drugs, but moved to a back room because that was the only room with a light. While the men were in the back room, another man, whom Johnson identified as defendant, came into the room, pointing a gun. Johnson claimed that defendant shot and robbed him, and also shot Moss. Johnson pretended to be dead and was able to leave the house after the others left. Moss, however, died from his gunshot wounds. His body was later burned when the house was set on fire.

> *People v. Wagner,* No. 245091, * 1-2 (Mich.Ct. App. October 28, 2004).

In addition to Thelyus Johnson's testimony, Antonio Edwards testified against Petitioner, as part of a plea bargain with the Wayne County Prosecutor.

Petitioner's conviction was affirmed on appeal. *People v. Wagner,* No. 245091 (Mich.Ct. App. October 28, 2004); *lv. den.* 474 Mich. 912; 705 N.W. 2d 352 (2005)(Cavanagh and Kelly, JJ, would grant leave to appeal). Additional facts will be discussed when addressing Petitioner's individual claims. Petitioner seeks the issuance of a writ of habeas corpus on the following grounds:

> I. The trial court's failure to grant a mistrial after allowing the prosecutor to introduce prejudicial and irrelevant evidence of mugshots, aliases and hearsay police reports that only showed Petitioner as a bad man deprived Petitioner a fair trial and the Court of Appeals' decision involved an unreasonable application of clearly established federal law.

> II. Petitioner Sherman Wagner was denied his right to a fair trial in violation of due process where the court erroneously allowed hearsay and the prosecutor to use rebuttal testimony to interject an impermissible and suggestive voice identification.

III. Petitioner Sherman Wagner was denied a fair trial by prosecutor's misconduct throughout the trial and violated his right to due process of law clause of the United States Constitution.

IV. Petitioner Sherman Wagner was denied the effective assistance of counsel at trial.

V. The cumulative effect of the foregoing errors at trial denied Petitioner Sherman Wagner a fair trial in violation of due process of law and in violation of the United States Constitution.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A. Claim # 1. The mistrial claim.**

Petitioner first claims that the trial court erred in denying his motion for a mistrial after the prosecutor introduced evidence of Petitioner's prior use of aliases, prior arrests, past mug shots, and other police records. Petitioner claims that the prosecution used this evidence for the sole purpose of showing that Petitioner was a "bad man," in violation of M.R.E. 404(b).

Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour,* 224 F. 3d 542, 552 (6th Cir. 2000). The admission of "prior bad acts" evidence against a habeas petitioner in violation of M.R.E. 404(b) does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003). The admission of a habeas petitioner's prior mug shots into evidence is also non-cognizable on federal habeas review. *See Gant v. Kropp,* 407 F. 2d 776, 777-78 (6th Cir. 1969). Finally, Petitioner would not be entitled to habeas relief on the ground that the prosecution presented evidence of Petitioner's prior use of aliases. *See Martin v. Jabe,* 747 F. Supp. 1227, 1230 (E.D. Mich. 1989). Petitioner is not entitled to habeas relief on

his first claim.

**B.  Claim # 2.  The hearsay/voice identification claims.**

Petitioner next claims that the trial court violated his right to a fair trial by allowing into evidence several forms of inadmissible evidence regarding the identification of Petitioner as the perpetrator.

Petitioner first claims that the prosecutor elicited impermissible hearsay evidence from the officer in charge of the case that Thelyus Johnson never identified anyone other than Petitioner as being the shooter.  Because Johnson testified at trial and was subject to cross-examination on his identification of Petitioner, the officer-in-charge's statements were not hearsay under state evidence law, See M R.E 801(d)(1)(C), nor does this evidence violate the Confrontation Clause of the Sixth Amendment. *See United States v. Owens*, 484 U.S. 554, 560 (1988); *See also Greene v. Lafler,* 447 F. Supp. 2d 776, 793 (E.D. Mich. 2006).  The officer's testimony that Johnson never identified anyone other than Petitioner as being the perpetrator in this case does not entitle Petitioner to habeas relief.

Petitioner next claims that the trial court erred in allowing Thelyus Johnson, after he had heard Petitioner testify in court, testify in rebuttal that Petitioner's voice was the same voice as the shooter's.

To the extent that Petitioner claims the admission of Johnson's testimony was inappropriate rebuttal testimony, this claim is not cognizable on federal habeas review, because it involves a violation of state evidentiary rules. *Slack v. Cason,* 258 F. Supp. 2d

727, 733 (E.D. Mich. 2003).

To the extent that Petitioner claims that Johnson was permitted to engage in a suggestive voice identification procedure, he would not be entitled to relief on his claim either.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004)(citing *English v. Cody,* 241 F. 3d 1279, 1282-83 (10th Cir. 2001)(citing *United States v. Wade*, 388 U.S. 218, 240, n. 31 (1967)). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F. 2d 226, 230 (6th Cir. 1992); *Johnson,* 344 F. Supp. 2d at 1090.

Petitioner has failed to show that the in-court voice identification procedure was unduly or impermissibly suggestive here. As one court has noted, "[a]n in-court voice identification in and of itself is no more or less suggestive than the common visual identification of a criminal defendant by a victim as the defendant sits at the defense table." *Stith v. State*, 201 Ga. App. 621, 622; 411 S.E. 2d 532, 533 (Ga. App. 1991).

Moreover, there is no entitlement to an in-court line-up or other method of lessening the suggestiveness of an in-court identification. *United States v. Domina,* 784 F. 2d 1361, 1369 (9th Cir. 1984); *Faulkner v. Makel,* 839 F. Supp. 1242, 1251 (E.D. Mich. 1993). Because Johnson's voice identification of Petitioner took place in open court in the presence of a jury, with the availability of cross-examination to reveal any weaknesses of such a procedure, the in-court voice identification was not unduly suggestive. *Domina,* 784 F. 2d at 1372. Accordingly, Petitioner is not entitled to habeas relief on his second claim.

### C. Claim # 3. The prosecutorial misconduct claims.

Petitioner next contends that he was deprived of a fair trial because of prosecutorial misconduct.

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-1356 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent

proof against the accused. *Id.*

Petitioner first contends that the prosecutor interjected irrelevant and impermissible evidence throughout the trial, in an attempt to link Petitioner to the murder.  The Sixth Circuit has noted that there are no Supreme Court cases which support the proposition that a prosecutor's questions that simply call for answers that are inadmissible due to relevancy constitute prosecutorial misconduct that rises to the level of a federal due process violation. *See Wade v. White,* 120 Fed. Appx. 591, 594 (6th Cir. 2005).  Therefore, the fact that the prosecutor attempted to elicit irrelevant evidence throughout Petitioner's trial in an attempt to link him with the murder or with the co-defendants in this case would not entitle him to habeas relief. *Id.*

Petitioner's related contention that the prosecutor's questions were an improper attempt to use Petitioner's involvement in other bad acts as evidence in regards to the offense charged presents a question for state evidentiary rules and therefore cannot form a basis for federal habeas relief. *See Dell v. Straub,* 194 F. Supp. 2d 629, 657 (E.D. Mich. 2002).

Petitioner next contends that the prosecutor committed misconduct by attempting to introduce an allegedly threatening letter that was sent to Antonio Edwards before he had testified at Petitioner's trial.  Petitioner claims that this was misconduct, because there was no evidence linking Petitioner to the letter.  However, by Petitioner's own admission, Edwards testified that he did not know who had sent this letter and in any event, did not feel threatened by the letter.

8

Petitioner is not entitled to habeas relief on this portion of his claim, in light of the fact that the prosecutor's attempts to question Edwards about this allegedly threatening letter appeared to be in good faith. *See King v. Elo,* 36 Fed. Appx. 805, 812-13 (6th Cir. 2002). Moreover, in light of the fact that Edwards did not ascribe any validity to the threats contained in the letter, Petitioner is unable to establish that the prosecutor's questions about this allegedly threatening letter deprived Petitioner of due process. *Id.*

As a related claim, Petitioner contends that the prosecutor allowed Edwards to commit perjury by testifying that he had known Petitioner for about one year prior to the murder and the robbery. Petitioner claims that this testimony is false because Petitioner had been incarcerated for another crime up until February 1, 2000, which was about one and a half months prior to the murder and shooting.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial

misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000). A habeas petitioner has the burden of establishing a *Giglio* violation. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003).

Petitioner is not entitled to habeas relief, because he has failed to show that the prosecutor knew or should have known that Edwards was committing perjury when he testified to knowing Petitioner for a year prior to the shooting. *See Foley v. Parker,* 488 F. 3d 377, 392 (6th Cir. 2007). Moreover, even if Edwards' trial testimony about the length of his acquaintanceship with Petitioner was false, Petitioner has not establish a reasonable likelihood that this testimony could have affected the jury' judgment, in light of the fact that Thelyus Johnson also identified Petitioner as the shooter in this case. *Id.* Petitioner is not entitled to habeas relief on his third claim.

**D. Claim # 4. The ineffective assistance of counsel claim.**

Petitioner next contends that he was deprived of the effective assistance of trial counsel.

To prevail on his ineffective assistance of counsel claims, Petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance

prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner first contends that trial counsel was ineffective for failing to properly conduct an pre-trial evidentiary hearing to suppress Thelyus Johnson's pre-trial photographic identification of Petitioner as his assailant, on the ground that the pre-trial identification procedure was unduly suggestive. Although counsel filed a pre-trial motion for an evidentiary hearing, counsel did not call Johnson or the line-up attorney to testify at the suppression hearing.

Subsequent to Petitioner's trial, an evidentiary hearing was conducted in the trial court on Petitioner's ineffective assistance of counsel claims pursuant to *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973). Petitioner's trial counsel was the only witness called at the *Ginther* hearing. Petitioner's trial counsel acknowledged that he did not want to bring a pre-trial motion to suppress the pre-trial identification and did so only to placate Petitioner. Counsel testified that he did not believe that the photo array was unduly suggestive, although he acknowledged that Petitioner was the lightest-skinned person in the photo showup and that there was a white piece of paper covering the name tag that prisoners wear in Petitioner's photograph. Counsel admitted that he did not want the photographic identification to be suppressed. Instead, counsel wanted to use Johnson's photographic identification to impeach Johnson with the fact that Johnson picked out Petitioner, the lightest skinned person from the photographic lineup, even though Johnson had described his assailant to the police as being dark-skinned. (*Ginther* Hearing, Motion for New Trial, April 5, 2004, pp. 5-12).

11

The decision to attack the credibility of Johnson's identification of Petitioner through cross-examination, rather than to object to the in-court identification, was a reasonable trial strategy that defeats Petitioner's ineffective assistance of trial counsel claim. *Scott v. Elo,* 100 Fed. Appx. 332, 333-34 (6th Cir. 2004); *Monroe v. Stegall,* 197 F. Supp. 2d 753, 761 (E.D. Mich. 2001).

As a related claim, Petitioner contends that counsel should have called an expert on eyewitness identification to testify at Petitioner's trial. Counsel testified that he didn't consider calling such an expert because he did not know that such experts existed. (*Id.* at pp. 16-17). In this case, counsel's decision not to call an expert witness in the field of expert identification is a tactical one that fell within the range of reasonable choices. *See Brown v. Terhune,* 158 F. Supp. 2d 1050, 1071 (N.D. Cal. 2001). Many federal courts have held that a defense attorney's cross-examination of eyewitnesses, as opposed to calling an expert, is a sufficient method of attempting to deal with the issues presented by eyewitness testimony. *See Madrigal v. Bagley,* 276 F. Supp. 2d 744, 791-92 (N.D. Ohio 2003)(collecting cases). Petitioner's counsel raised a misidentification defense at trial through the cross-examination of witnesses and in opening and closing argument. Counsel was therefore not deficient in failing to call an expert in eyewitness identification. *Id.*

Petitioner next contends that counsel failed to properly impeach the testimony of Thelyus Johnson.

"Courts generally entrust cross-examination techniques, like other matters of trial

strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d at 651. "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

Petitioner first contends that counsel should have impeached Johnson's testimony that the gun used was a small caliber gun, by eliciting testimony that the weapons used were actually larger weapons. Counsel testified at the *Ginther* hearing that he did bring up the discrepancies in the descriptions of the bullet sizes in his closing argument. (*Id.* at p. 59). Because counsel did highlight the discrepancies between the caliber sizes of the bullets in his closing argument, this portion of Petitioner's claim is without merit.

Petitioner next contends that counsel was ineffective for failing to impeach Johnson's testimony that he had gone to St. John's Hospital for treatment of his gunshot wounds, by calling an investigator who had gone to the hospital on counsel's behalf and had been unable to discover any record of Johnson ever having been treated at St. John's Hospital. Counsel testified at the *Ginther* hearing that he did not call the investigator to testify on this issue because Johnson was originally from the South, had lived in Lansing, and had no connection with Detroit and therefore could have simply been wrong about the name of the hospital where he went for treatment. (*Id.* at pp. 19-21). In this case, counsel's decision not to challenge Johnson over this minor inconsistency was not ineffective assistance of counsel. *See Campbell v. United States,* 364 F. 3d 727, 735 (6th Cir. 2004).

As a related claim, Petitioner contends that counsel should have called a Ms. Ramsey to impeach Johnson's credibility regarding his version of the events surrounding the shooting. Petitioner, however, never presented Ms. Ramsey as a witness at the *Ginther* hearing. Analyzing claims that trial counsel was ineffective for failing to call witnesses typically requires that a habeas petitioner proffer the missing testimony through witnesses at an evidentiary hearing. *Veal v. Cooper*, 936 F. Supp. 511, 513-514 (N.D. Ill. 1996)(citing to *Cross v. DeRobertis*, 811 F. 2d 1008, 1016 (7th Cir. 1987). Without testimony from Ms. Ramsey, it is impossible for this Court to determine whether her testimony would have been favorable to Petitioner.

Petitioner next claims that counsel was ineffective for failing to call the prosecution witnesses liars. However, counsel testified at the *Ginther* hearing that he thought it was better to argue that some of the witnesses were mistaken, rather than that they were all lying. (*Id.* at pp. 14, 55). Counsel testified that it was his belief that "[i]f you call everybody in the court room a liar but yourself, the chances of a jury believing that you're the only one telling the truth is negligible. And I learned trying cases, the least amount of people you call a liar the better off you're going to be." (*Id.* at p. 55). Counsel opined it was a more gentle way to handle Johnson by saying that he was wrong, rather than that he was a liar. Counsel testified that he did, in fact, call Antonio Edwards a liar at trial. (*Id.*).

Defense counsel's decision to argue that Johnson was mistaken, rather than arguing that Johnson had perjured himself, was a reasonable trial strategy that defeats

Petitioner's ineffective assistance of counsel claim. *See Matista v. U.S.,* 885 F. Supp. 634, 638-39 (S.D.N.Y. 1995).

Petitioner next contends that counsel was ineffective for allowing Antonio Edwards' allegedly perjured testimony that he had known Petitioner for nine months prior to the shooting to go uncorrected or to impeach it with prison records which would have showed that Petitioner was in prison during this time period.

Counsel testified at the *Ginther* hearing that he did not alert the court about Edwards' alleged perjury about knowing Petitioner for nine months prior to the shooting, because it was possible that Edwards was simply wrong, not lying. Counsel further testified that he believed that it was better to attack Edwards' credibility by bringing in the testimony of a police officer, Ahmed Haidar, to show that it was Petitioner's brother, and not Petitioner, as Edwards had testified, who had been arrested with Edwards in a drug raid of the house on Eureka Street three days prior to the shooting. Counsel also brought out testimony that Edwards had been seen by a clinical psychologist and had basically lied to everyone. (*Id.* at pp. 35-41). Moreover, a review of counsel's closing argument shows that counsel did attack Edwards' testimony by bringing up the fact that Petitioner had been in prison up to two months prior to the shooting. (T. 7/15/2002, p. 27).

With respect to counsel's failure to object to the allegedly perjured testimony of Antonio Edwards, Petitioner's claim fails because he has failed to show that the government knowingly used perjured testimony in this case or that this testimony was

material to Petitioner's conviction. *Monroe v. Stegall,* 197 F. Supp. 2d at 760.

To the extent that Petitioner is claiming that counsel failed to adequately impeach Edwards with his testimony about having been acquainted with Petitioner for nine months prior to the shooting, the Court notes that Petitioner's counsel extensively impeached Edwards on a number of points, including the fact that he had initially named Sol Bryant to the police as being the shooter, that another person named Amir Ross had also named Sol Bryant as being the shooter, that Edwards was testifying against Petitioner in exchange for a plea bargain and sentence reduction, and that Edwards had been mistaken or lying about Petitioner being with him at the house on Eureka Street during a drug raid that took place three days prior to the shooting. Counsel's failure to impeach Edwards about having known Petitioner for nine months prior to the shooting did not undermine confidence in outcome of the case, since a variety of other impeachment evidence was admitted in this case. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 676-77 (E.D. Mich. 2006).

Petitioner next contends that counsel was ineffective for failing to move for the exclusion of Petitioner's aliases from evidence pursuant to M.R.E. 404(b). The Michigan Court of Appeals, however, indicated that evidence of Petitioner's aliases was admissible pursuant to M.R.E. 404(b) for the purpose of rebutting Petitioner's misidentification defense. *Wagner,* Slip. Op. at 3-4. Because the Michigan Court of Appeals determined that such "other acts" evidence was admissible, counsel was not ineffective for failing to object to its admission. *See Pearl v. Cason,* 219 F. Supp. 2d

820, 828-29 (E.D. Mich. 2002).

Although unclear, it appears as though Petitioner also claims that counsel was ineffective for failing to move for the suppression of his four prior felony convictions for unlawfully driving away an automobile (U.D.A.A.) from June of 1991, Attempted U.D.A.A. from September of 1991, Conspiracy to Commit U.D.A.A. from August of 1992 and Larceny from a Motor Vehicle from January of 2002. Assuming that counsel was ineffective for failing to move for the suppression of these convictions pursuant to M,R.E. 609, Petitioner is unable to show that he was prejudiced, so as to be entitled to habeas relief, in light of the fact that two witnesses testified that he committed the crimes charged here. *See James v. United States,* 217 Fed.Appx. 431, 436-37 (6th Cir. 2007).

Petitioner next contends that counsel was ineffective for failing to object to the prosecutor's acts of taunting, insulting, and even touching the Petitioner during her cross-examination of Petitioner. Counsel testified at the *Ginther* hearing that he did not object to the prosecutorial misconduct because he initially thought that it was a mistake when the prosecutor touched Petitioner. When counsel realized that the prosecutor's actions were intentional, counsel believed that he could use the prosecutorial misconduct to show that Petitioner was not that bad of a person, as the prosecution was suggesting, because a violent person would have struck back at the prosecutor. (*Id.* at pp. 44-45). Counsel, in fact, pointed out in his closing argument that Petitioner had not reacted violently to the prosecutor's taunting and insults, as a person accused of a violent act would be expected to do. (T. 7/15/2002, pp. 25-26). In this case, because counsel had

sound tactical reasons for not objecting to the prosecutorial misconduct, Petitioner is unable to establish that counsel was ineffective for failing to do so. *See Ege v. Yukins,* 380 F. Supp. 2d 852, 882 (E.D. Mich. 2005); *aff'd in part and rev'd in part on other grds,* 485 F.3d 364 (6th Cir. 2007).

Petitioner next contends that defense counsel's closing argument was deficient. While the right to effective assistance of counsel extends to closing arguments, counsel nonetheless has wide latitude in deciding how best to represent a criminal defendant, and deference to a defense counsel's decisions in his closing argument is particularly important because of the broad range of legitimate defense strategies at that stage. *Yarborough v. Gentry,* 124 S. Ct. 1, 4 (2003). Judicial review of a defense attorney's summation must therefore be highly deferential and is "doubly deferential when it is conducted through the lens of federal habeas." *Id.*

In the present case, counsel made a lengthy closing argument. (T. 7/15/2002, pp. 25-43). In his closing argument, he pointed out that Petitioner had not reacted violently to the prosecutor's taunts and insults, as a murderer would be expected to do. Counsel pointed out that Antonio Edwards and Amir Ross had initially named Sol Bryant as the shooter, not Petitioner. Counsel accused Edwards of lying about a number of issues. Counsel pointed out that none of the police ever showed any pictures of Petitioner's brother to either Thelyus Johnson or Antonio Edwards to see if either man would identify Petitioner's brother as being the shooter. Counsel pointed out that Ahmad Haidar testified that it was Petitioner's brother, and not Petitioner, who was arrested in

18

the drug raid with Edwards three days prior to the shooting.  Counsel noted the discrepancies in Johnson's description of his assailant and Petitioner's appearance in the photo showup.  Although counsel brought up that Petitioner was a "bad man," a car thief, and a man who "got his Phd in crime," he noted that anyone with such a record should have learned in prison how to do a murder properly, which would not involve leaving any witnesses alive, as had happened in this case.  Counsel further pointed out that Edwards was testifying in exchange for a plea bargain.  Counsel also brought out the fact that Johnson testified that Petitioner shot Moss twice with a .25 caliber weapon, but that the medical examiner testified that four bullets were recovered from the victim's head.  Counsel further pointed out that an expert testified that the bullets recovered were from a .357 caliber weapon and perhaps a .22 caliber weapon, but that none recovered were from a .25 caliber weapon.

A review of defense counsel's closing argument shows that he thoroughly and effectively challenged the prosecution's evidence in this case.  Although counsel brought up Petitioner's prior convictions for car theft and his subsequent incarcerations, he did so to show that Petitioner had neither the inclination or the experience to actually murder someone.  By candidly acknowledging a client's shortcomings, a defense attorney may be able to build credibility with a jury and persuade it to focus on the relevant issues in the case. *Yarborough,* 124 S. Ct. at 6.  Petitioner has failed to show that counsel's disparaging remarks about him during closing argument were not part of a strategic choice of establishing some degree of credibility with the jury, therefore, his ineffective

assistance of counsel claim must fail. *See e.g. Cordova v. Johnson,* 993 F. Supp. 473, 537-39 (W.D. Tex. 1998). Moreover, even if counsel was wrong about the number of guns used in the killing, as Petitioner suggests, counsel nevertheless correctly argued that no .25 caliber were ever recovered from the crime scene, so as to impeach Johnson's testimony that a .25 caliber weapon was used.

In this case, Petitioner has taken the "'kitchen sink' approach to habeas by alleging that virtually every aspect of his trial counsel's representation was improper and prejudicial." *Ross v. United States,* 339 F. 3d 483, 491 (6th Cir. 2003). However, a federal court's role on habeas review of a state court conviction "is not to nitpick gratuitously counsel's performance," since the issue is ultimately a habeas petitioner's right to a fair trial, not perfect representation. *Smith v. Mitchell,* 348 F. 3d 177, 206 (6th Cir. 2003). The Michigan Court of Appeals' rejection of Petitioner's ineffective assistance of counsel claims was therefore not an unreasonable application of *Strickland,* so as to entitle him to habeas relief. *See Siebert v. Jackson*, 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

**E. Claim # 5. The cumulative errors claim.**

Petitioner finally alleges that he was deprived of a fair trial because of cumulative error. The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F. 3d 416, 447 (6th Cir. 2002). Therefore, Petitioner is not entitled to habeas relief on his cumulative errors claim. *Id.; See also Salters v. Palmer,* 271 F. Supp. 2d

980, 992 (E.D. Mich. 2003).

## IV. <u>Conclusion</u>

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to Petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

The Court will deny Petitioner a Certificate of Appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.  Jurists of reason would not find this Court's resolution of Petitioner's claim to be debatable or that he should receive encouragement to proceed further. *Siebert,* 205 F. Supp. 2d at 735.

Although this Court will deny a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a

lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claim, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.   ORDER

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **GRANTED** leave to appeal *in forma pauperis.*

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 15, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record and pro se petitioner by electronic means or U.S. Mail on August 15, 2007.

s/Carol A. Pinegar
Deputy Clerk