## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SHERMAN WAGNER,

      Petitioner,

                             CASE NO. 2:06-CV-10514

v.                            HONORABLE VICTORIA A. ROBERTS

                             UNITED STATES DISTRICT JUDGE

PAUL KLEE,

      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Sherman Wagner ("Petitioner"), confined at the Kinross Correctional Facility in Kincheloe, Michigan, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed both *pro se* and through attorney Andrew N. Wise of the Federal Defender Office, Petitioner challenges his conviction for first-degree felony murder, M.C.L.A. 750.316; first-degree premeditated murder, M.C.L.A. 750.316; armed robbery, M.C.L.A. 750.529; assault with intent to commit murder, M.C.L.A. 750.83; and felony-firearm, M.C.L.A. 750.227b.

The application for writ of habeas corpus is **DENIED.**

## I. Background

A jury convicted Petitioner of the above charges following trial in Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan

1

Court of Appeals; they are presumed correct on habeas review pursuant to 28 U.S.C. §

2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> According to the testimony at trial, Kiley Moss and Thelyus Johnson arranged to purchase drugs from Antonio Edwards in Detroit. The two men took a bus from Lansing to Detroit, where Edwards met them. Edwards did not immediately have the drugs available. Eventually, Edwards and Sol Bryant took the men to a house where they met Deshawn Lucci. The men began to set up a scale to weigh the drugs, but moved to a back room because that was the only room with a light. While the men were in the back room, another man, whom Johnson identified as defendant, came into the room, pointing a gun. Johnson claimed that defendant shot and robbed him, and also shot Moss. Johnson pretended to be dead and was able to leave the house after the others left. Moss, however, died from his gunshot wounds. His body was later burned when the house was set on fire.

*People v. Wagner,* No. 245091, * 1-2 (Mich.Ct. App. October 28, 2004).

In addition to Thelyus Johnson's testimony, Antonio Edwards testified against

Petitioner as part of a plea bargain with the Wayne County Prosecutor.

Petitioner's conviction was affirmed on appeal. *People v. Wagner,* No. 245091

(Mich.Ct. App. October 28, 2004); *lv. den.* 474 Mich. 912; 705 N.W. 2d 352

(2005)(Cavanagh and Kelly, JJ, would grant leave to appeal).

Petitioner originally filed a *pro se* petition for writ of habeas corpus in 2006. On

August 15, 2007, this Court denied Petitioner's application for habeas relief. The Court

also denied Petitioner a certificate of appealability but granted him leave to appeal *in*

*forma pauperis. Wagner v. Smith,* No. 2007 WL 2413088 (E.D.Mich. August 15, 2007);

*reconsideration den.* No. 2007 WL 3124659 (E.D.Mich. October 25, 2007).

The United States Court of Appeals for the Sixth Circuit vacated and remanded the

matter, finding that Petitioner had failed to properly exhaust two of his prosecutorial misconduct claims and one ineffective assistance of counsel claim with the state courts prior to seeking habeas relief. *Wagner v. Smith,* 581 F. 3d 410 (6th Cir. 2009).  Although the Sixth Circuit discussed the four available options for addressing a habeas petition which contained unexhausted claims, *Id.* at 419 (discussing the four options), the Sixth Circuit strongly suggested that this Court should consider staying the petition and holding it in abeyance to permit Petitioner to return to the state courts to properly exhaust these claims. *Id.* at 419-20.

On November 13, 2009, this Court vacated its opinion and order from August 15, 2007 denying Petitioner habeas relief.  This Court further held the petition for writ of habeas corpus in abeyance to permit Petitioner to return to the state courts to exhaust his claims.  This Court administratively closed the case.

Petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. Seq.*  The trial court denied Petitioner's motion for relief from judgment. *People v. Wagner,* No. 02-002648-01 (Third Circuit Court of Michigan for the County of Wayne, Criminal Division, June 24, 2010).  The Michigan appellate courts denied Petitioner leave to appeal. *People v. Wagner,* No. 299095 (Mich.Ct.App. May 12, 2011); *lv. den.* 490 Mich. 968, 806 N.W.2d 521 (2011).

On March 30, 2012, this Court reopened the case to the Court's active docket and granted Petitioner's motion to amend his habeas petition.  Petitioner also seeks to incorporate the claims that he raised in his original habeas petition.

3

In his original habeas petition, Petitioner seeks the issuance of a writ of habeas corpus on the following grounds:

> I. The trial court's failure to grant a mistrial after allowing the prosecutor to introduce prejudicial and irrelevant evidence of mugshots, aliases and hearsay police reports that only showed Petitioner as a bad man deprived Petitioner a fair trial and the Court of Appeals' decision involved an unreasonable application of clearly established federal law.
>
> II. Petitioner Sherman Wagner was denied his right to a fair trial in violation of due process where the court erroneously allowed hearsay and the prosecutor to use rebuttal testimony to interject an impermissible and suggestive voice identification.
>
> III. Petitioner Sherman Wagner was denied a fair trial by prosecutor's misconduct throughout the trial and violated his right to due process of law clause of the United States Constitution.
>
> IV. Petitioner Sherman Wagner was denied the effective assistance of counsel at trial.
>
> V. The cumulative effect of the foregoing errors at trial denied Petitioner Sherman Wagner a fair trial in violation of due process of law and in violation of the United States Constitution.

In his amended habeas petition, Petitioner seeks habeas relief on the following grounds, which the Court renumbers in order to be chronological with the five claims raised in Petitioner's original habeas petition:

> VI. The Prosecutor's Flagrant Misconduct Deprived Mr. Wagner of His Right to Due Process of Law.
>
> VII. Mr. Wagner's Sixth Amendment Right to Confront the Witnesses Against Him Was Violated When the Prosecutor Introduced an Out of Court Statement that Mr. Wagner was Involved in Another Homicide.
>
> VIII. Mr. Wagner Was Denied His Sixth Amendment Right to the Effective Assistance of Trial and Appellate Counsel.

4

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
>> (1)      resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly established
>> Federal law, as determined by the Supreme Court of the
>> United States; or
>> (2)      resulted in a decision that was based on an
>> unreasonable determination of the facts in light of the
>> evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A

federal habeas court may not "issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

5

state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d) as amended by the AEDPA does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could

6

disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

### A.  Claim # 1.  The mistrial claim.

Petitioner first claims that the trial court erred in denying his motion for a mistrial after the prosecutor introduced evidence of Petitioner's prior use of aliases, prior arrests, past mug shots, and other police records. Petitioner claims that the prosecution used this evidence for the sole purpose of showing that Petitioner was a "bad man," in violation of M.R.E. 404(b). [1]

---

[1]  Respondent's attorney in her supplemental answer suggests that the majority of Petitioner's claims from his first habeas petition should not be reviewed by this Court because Petitioner abandoned these claims by not seeking review of these claims before the Sixth Circuit when he appealed the denial of his original habeas petition by this Court. Respondent ignores the fact that the Sixth Circuit, in remanding the case back to this Court, suggested that this Court should hold the original petition in abeyance to permit Petitioner to return to the state courts to

7

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Foster v. Withrow,* 159 F. Supp. 2d 629, 642-43 (E.D. Mich. 2001).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not

---

exhaust his additional claims. This Court, in fact, held the petition in abeyance on remand to permit Petitioner to return to the state court to exhaust his additional claims. Because the whole purpose of the stay and abeyance procedure is to preserve a habeas petitioner's ability to return to the state courts to exhaust additional claims without jeopardizing the timeliness of the initial habeas petition, the Sixth Circuit's suggestion that the petition be held in abeyance strongly implied that Petitioner would be able to again raise the issues that he had raised in his first petition after returning to the state courts. Petitioner's claims from his habeas petition are therefore properly before this Court for review.

entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003).

The admission of a habeas petitioner's prior mug shots into evidence is also non-cognizable on federal habeas review. *See Gant v. Kropp,* 407 F. 2d 776, 777-78 (6th Cir. 1969). Petitioner would thus not be entitled to relief on this portion of his claim.

Finally, Petitioner would not be entitled to habeas relief on the ground that the prosecution presented evidence of Petitioner's prior use of aliases. *See Martin v. Jabe,* 747 F. Supp. 1227, 1230 (E.D. Mich. 1989). Petitioner is not entitled to habeas relief on his first claim.

**B.  Claims ## 2 and # 7.  The Confrontation Clause/hearsay claims.**

The Court discusses  portions of Petitioner's second and seventh claims together; they both allege that the trial court improperly admitted hearsay evidence against Petitioner, in violation of his Sixth Amendment right to confrontation.

The first task in analyzing Petitioner's Confrontation Clause claims is to determine what constitutes "clearly established federal law" with respect to the claims. The phrase "clearly established federal law," for purposes of § 2254(d)(1), is the governing legal principle or principles set forth by the United States Supreme Court at the time that the state court renders its decision. *Lockyer v. Andrade,* 538 U.S. at 71-72.

At the time of Petitioner's trial, the United States Supreme Court held that the

9

veracity of hearsay statements was sufficiently dependable to allow the untested admission of such statements against an accused when:

> 1.  the evidence falls within a firmly rooted exception to the hearsay rule; or
> 2. it contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability.

*Ohio v. Roberts*, 448 U.S. 56, 66 (1980).

On March 8, 2004, the United States Supreme Court overruled its holding in *Ohio v. Roberts, supra,* and held that out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *See Crawford v. Washington,* 541 U.S. 36, 59 (2004).

Petitioner's direct appeal of right was decided by the Michigan Court of Appeals on October 28, 2004, after the issuance of the *Crawford* decision.  The Sixth Circuit instructs that "[u]nder [the] AEDPA ... [a court's] inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [petitioner's] conviction became final." *Onifer v. Tyskiewicz*, 255 F. 3d 313, 317-18 (6ᵗʰ Cir. 2001).   Because *Crawford* was decided by the U.S. Supreme Court while Petitioner's case was pending on direct appeal in the Michigan appellate courts, this Court believes that *Crawford* constitutes clearly established federal law as determined by the Supreme Court for purposes of analyzing Petitioner's confrontation claims. *See Garcia-Dorantes v. Warren,* 769 F. Supp. 2d 1092,

10

1110 (E.D. Mich. 2011).

In his second claim, Petitioner first argues that the prosecutor elicited impermissible hearsay evidence from the officer in charge of the case that Thelyus Johnson never identified anyone other than Petitioner as the shooter.

Thelyus Johnson testified at Petitioner's trial and was subject to cross-examination from defense counsel.  Because Johnson testified at trial and was subject to cross-examination on his identification of Petitioner, the officer-in-charge's statements were not hearsay under state evidence law, See M R.E 801(d)(1)(C), nor does this evidence violate the Confrontation Clause of the Sixth Amendment. *See United States v. Owens*, 484 U.S. 554, 560 (1988).  The officer's testimony that Johnson never identified anyone other than Petitioner as being the perpetrator in this case does not entitle Petitioner to habeas relief.

In his seventh claim, Petitioner contends that his right to confrontation was violated when the prosecutor, while cross-examining Petitioner, introduced an out-of-court statement made by Arthur Gamich that Petitioner was involved in another homicide.  The following exchange occurred between the prosecutor and Petitioner:

> Q [by the prosecutor]: And you remember that Gamich said that you and Duke are the ones who shot Kamal Logan?
>
> A [Petitioner]: Yeah, I remember that.
>
> Q. Okay. He said that in his statement, right?
>
> A. He said that that (sic) you—he said that homicide said that, and he never said it, but he signed it. That's why the case got threw out. He said

11

he never said that.

(Tr. 7/11/02, p. 111).

The trial court rejected this claim on post-conviction review, ruling that Petitioner's confrontation rights had not been violated because Gamich's statement had not itself been introduced into evidence. *People v. Wagner,* No. 02-002648-01, Slip. Op. at 6-7.

Petitioner is not entitled to habeas relief on his claim for two reasons. First, the Confrontation Clause does not appear to be implicated; Mr. Gamich's actual statement was never admitted into evidence. Secondly, the prosecutor appears to have questioned Petitioner about this unrelated murder case to impeach his testimony on direct examination that he had never been involved in any homicides or assaultive crimes.

The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford,* 541 U.S. at 59, n. 9; *See also Tennessee v. Street*, 471 U.S. 409, 414 (1985)(defendant's rights under the Confrontation Clause were not violated by introduction of an accomplice's confession for the nonhearsay purpose of rebutting defendant's testimony that his own confession was coercively derived from the accomplice's statement). The prosecutor's introduction of Mr. Gamich's statement implicating Petitioner in an unrelated murder did not violate Petitioner's Confrontation Clause rights, where the prosecutor did not introduce the statement itself, but only used the statement for the nonhearsay purpose of impeaching Petitioner's testimony that he had never been involved in other homicides or

12

assaultive crimes. *See McPherson v. Woods,* 506 Fed. Appx. 379, 389 (6th Cir. 2012). Petitioner is not entitled to habeas relief on his confrontation claims.

### C.  Claim # 2.  The voice identification claim.

As part of his second claim, Petitioner argues that the trial court erred in allowing Thelyus Johnson, after he had heard Petitioner testify in court, testify in rebuttal that Petitioner's voice was the same voice as the shooter's.

To the extent that Petitioner claims the admission of Johnson's testimony was inappropriate rebuttal testimony, this claim is not cognizable on federal habeas review, because it involves a violation of state evidentiary rules. *Slack v. Cason,* 258 F. Supp. 2d 727, 733 (E.D. Mich. 2003).

To the extent that Petitioner claims that Johnson was permitted to engage in a suggestive voice identification procedure, he would not be entitled to relief on his claim either.

A criminal defendant has the initial burden to prove that the identification procedure was impermissibly suggestive.  It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004)(citing *English v. Cody,* 241 F. 3d 1279, 1282-83 (10th Cir. 2001)(citing *United States v. Wade*, 388 U.S. 218, 240, n. 31 (1967)). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicate that the identification is

13

otherwise reliable, no due process violation has occurred; so long as there is not a

substantial misidentification, it is for the jury or factfinder to determine the ultimate

weight to be given to the identification. *See United States v. Hill*, 967 F. 2d 226, 230 (6th

Cir. 1992); *Johnson,* 344 F. Supp. 2d at 1090.

Petitioner failed to show that the in-court voice identification procedure was

unduly or impermissibly suggestive here.  As one court noted, "[a]n in-court voice

identification in and of itself is no more or less suggestive than the common visual

identification of a criminal defendant by a victim as the defendant sits at the defense

table." *Stith v. State*, 201 Ga. App. 621, 622; 411 S.E. 2d 532, 533 (Ga. App. 1991).

Moreover, there is no entitlement to an in-court line-up or other method of lessening the

suggestiveness of an in-court identification. *United States v. Domina,* 784 F. 2d 1361,

1369 (9th Cir. 1984); *Faulkner v. Makel,* 839 F. Supp. 1242, 1251 (E.D. Mich. 1993).

Because Johnson's voice identification of Petitioner took place in open court in the

presence of a jury, with the availability of cross-examination to reveal any weaknesses of

such a procedure, the in-court voice identification was not unduly suggestive. *Domina,*

784 F. 2d at 1372.  Accordingly, Petitioner is not entitled to habeas relief on this portion

of his second claim.

### D.  Claims # 3 and # 6.  The prosecutorial misconduct claims.

In his third and sixth claims, Petitioner alleges he was deprived of a fair trial

because of prosecutorial misconduct.  The Court consolidates the two claims; many of

the allegations contained within the two claims are interrelated or overlap each other.

14

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6ᵗʰ Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6ᵗʰ Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643-45.  The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6ᵗʰ Cir.1997) (quoting *Serra v. Michigan Dep't of Corr*., 4 F.3d 1348, 1355 (6ᵗʰ Cir. 1993)).  Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6ᵗʰ Cir. 2006)(quoting *Donnelly*, 416 U.S. at 645).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87).  This is particularly so, "because the *Darden*

15

standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations[,].'" *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

Petitioner first argues that the prosecutor interjected irrelevant and impermissible evidence throughout the trial, in an attempt to link Petitioner to the murder. The Sixth Circuit noted that there are no Supreme Court cases which support the proposition that a prosecutor's questions that simply call for answers that are inadmissible due to relevancy constitute prosecutorial misconduct that rises to the level of a federal due process violation. *See Wade v. White,* 120 Fed. Appx. 591, 594 (6th Cir. 2005). Therefore, the fact that the prosecutor attempted to elicit irrelevant evidence throughout Petitioner's trial in an attempt to link him with the murder would not entitle Petitioner to habeas relief. *Id.*

Petitioner also contends that the prosecutor committed misconduct by questioning Petitioner about his involvement in two uncharged murders. The trial court rejected this claim on post-conviction review, holding that the prosecutor did not err in this line of questioning because Petitioner opened the door when he testified on direct examination that he had never been arrested or convicted for a crime involving violence, and later volunteered that he had been investigated for an unrelated homicide. *People v. Wagner,* No. 02-002648-01, Slip. Op. at 5.

"[T]he price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him." *Michelson v. United States,*

16

335 U.S. 469, 479 (1948).  Because Petitioner placed his character at issue by his direct testimony, Petitioner "opened the door" for the prosecution to discredit his character during its cross-examination by questioning him about his involvement in uncharged murders.  Accordingly, Petitioner failed to show that the prosecutor engaged in misconduct through her cross-examination on this subject. *See e.g. U.S. v. Roper,* 135 F. 3d 430, 433 (6th Cir. 1998).

Petitioner next argues that the prosecutor committed misconduct by attempting to introduce an allegedly threatening letter that was sent to Antonio Edwards before he had testified at Petitioner's trial.  Petitioner claims that this was misconduct, because there was no evidence linking Petitioner to the letter.  However, by Petitioner's own admission, Edwards testified that he did not know who had sent this letter and in any event, did not feel threatened by the letter.

Petitioner is not entitled to habeas relief on this portion of his claim; the prosecutor's attempts to question Edwards about this allegedly threatening letter appeared to be in good faith. *See King v. Elo,* 36 Fed. Appx. 805, 812-13 (6th Cir. 2002). Moreover, in light of the fact that Edwards did not ascribe any validity to the threats contained in the letter, Petitioner is unable to establish that the prosecutor's questions about this allegedly threatening letter deprived Petitioner of due process. *Id.*

As a related claim, Petitioner contends that the prosecutor allowed Edwards to commit perjury by testifying that he had known Petitioner for about one year prior to the murder and the robbery.  Petitioner claims that this testimony is false because Petitioner

17

had been incarcerated for another crime up until February 1, 2000, which was about one and a half months prior to the murder and shooting.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). But, to prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000). A habeas petitioner has the burden of establishing a *Giglio* violation. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003).

Petitioner is not entitled to habeas relief, because he failed to show that the prosecutor knew or should have known that Edwards was committing perjury when he testified to knowing Petitioner for a year prior to the shooting. *See Foley v. Parker,* 488 F. 3d 377, 392 (6th Cir. 2007). Moreover, even if Edwards' trial testimony about the length of his acquaintanceship with Petitioner was false, Petitioner has not establish a

18

reasonable likelihood that this testimony could have affected the jury' judgment, in light of the fact that Thelyus Johnson also identified Petitioner as the shooter. *Id.* Petitioner is not entitled to habeas relief on his third and sixth claims.

### E.  Claims # 4 and # 8.  The ineffective assistance of counsel claims.

In his fourth and eighth claims, Petitioner contends that he was deprived of the effective assistance of trial and appellate counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792).  The *Strickland* standard applies

as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an

20

easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel' s actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" eleven years ago and an appeal of right that occurred almost nine years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

Petitioner first alleges that trial counsel was ineffective for failing to properly conduct an pre-trial evidentiary hearing to suppress Thelyus Johnson's pre-trial photographic identification of Petitioner as the shooter, on the ground that the pre-trial identification procedure was unduly suggestive. Although counsel filed a pre-trial motion for an evidentiary hearing, counsel did not call Johnson or the line-up attorney to testify at the suppression hearing.

After Petitioner's trial, an evidentiary hearing was conducted in the trial court on

21

Petitioner's ineffective assistance of counsel claims pursuant to *People v. Ginther*, 390

Mich. 436, 443; 212 N.W. 2d 922 (1973). Petitioner's trial counsel was the only witness

at the *Ginther* hearing. Petitioner's trial counsel indicated that he did not want to bring a

pre-trial motion to suppress the pre-trial identification and did so only to placate

Petitioner. Counsel testified that he did not believe that the photo array was unduly

suggestive, although he acknowledged that Petitioner was the lightest-skinned person in

the photo showup and that there was a white piece of paper covering the name tag that

prisoners wear in Petitioner's photograph. Counsel admitted that he did not want the

photographic identification to be suppressed. Instead, counsel wanted to use Johnson's

photographic identification to impeach Johnson with the fact that Johnson picked out

Petitioner, the lightest skinned person from the photographic lineup, even though

Johnson had described his assailant to the police as being dark-skinned. (*Ginther*

Hearing, Motion for New Trial, April 5, 2004, pp. 5-12).

The decision to attack the credibility of Johnson's identification of Petitioner

through cross-examination, rather than to object to the in-court identification, was a

reasonable trial strategy that defeats Petitioner's ineffective assistance of trial counsel

claim. *Scott v. Elo,* 100 Fed. Appx. 332, 333-34 (6th Cir. 2004); *Monroe v. Stegall,* 197 F.

Supp. 2d 753, 761 (E.D. Mich. 2001).

As a related claim, Petitioner contends that counsel should have called an expert

on eyewitness identification to testify at Petitioner's trial. Counsel testified that he

didn't consider calling such an expert because he did not know that such experts existed.

(*Id.* at pp. 16-17).

As an initial matter, Petitioner presented no evidence either to the state courts or to this Court that he had an expert witness who would be willing to testify on the issue of eyewitness identification. A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F. 3d 662, 672 (6th Cir. 2006). Petitioner has never offered any evidence that an expert witness would testify and what the testimony would have been. In the absence of proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call an expert witness to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Moreover, with respect to Petitioner's claim that counsel was ineffective for failing to call an expert on eyewitness identification, "[N]o precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 Fed. Appx. 822, 833 (6th Cir. 2011); *See also Dorch v. Smith*, 105 Fed. Appx. 650, 653 (6th Cir. 2004)(upholding as reasonable the Michigan Court of Appeals's conclusion that defense counsel's failure to call an expert witness on eyewitness identification counsel did not satisfy *Strickland*, because counsel "presented several witnesses who testified as to [the habeas petitioner's] whereabouts on the weekend of the incident" and cross-examined the eyewitness regarding inconsistencies in his identification of the petitioner). Moreover, although counsel did

23

not call an expert witness on the problems of eyewitness identification, trial counsel cross-examined Johnson about the problems with his identification of Petitioner. Petitioner's counsel raised a misidentification defense at trial through the cross-examination of witnesses and in opening and closing argument.  Counsel was, therefore, not deficient in failing to call an expert in eyewitness identification. *See Greene v. Lafler,* 447 F. Supp. 2d 780, 794-95 (E.D. Mich. 2006).

Petitioner next contends that counsel failed to properly impeach the testimony of Thelyus Johnson.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002).  "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

Petitioner first contends that counsel should have impeached Johnson's testimony that the gun used was a small caliber gun, by eliciting testimony that the weapons used were actually larger weapons.  Counsel testified at the *Ginther* hearing that he did bring up the discrepancies in the descriptions of the bullet sizes in his closing argument. (*Id.* at p. 59).  Because counsel did highlight the discrepancies between the caliber sizes of the bullets in his closing argument, this portion of Petitioner's claim is without merit.

Petitioner next contends that counsel was ineffective for failing to impeach Johnson's testimony that he had gone to St. John's Hospital for treatment of his gunshot

24

wounds, by calling an investigator who had gone to the hospital on counsel's behalf and had been unable to discover any record of Johnson ever having been treated at St. John's Hospital.  Counsel testified at the *Ginther* hearing that he did not call the investigator to testify on this issue because Johnson was originally from the South, had lived in Lansing, and had no connection with Detroit and, therefore, could have simply been wrong about the name of the hospital where he went for treatment. (*Id.* at pp. 19-21).  Counsel's decision not to challenge Johnson over this minor inconsistency was not ineffective assistance of counsel. *See Campbell v. United States,* 364 F. 3d 727, 735 (6th Cir. 2004).

As a related claim, Petitioner contends that counsel should have called a Ms. Ramsey to impeach Johnson's credibility regarding his version of the events surrounding the shooting.  Petitioner, however, never presented Ms. Ramsey as a witness at the *Ginther* hearing.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  Petitioner failed to attach any offer of proof or any affidavits sworn by Ms. Ramsey.  In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call Ms. Ramsey to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d at 557.

Petitioner next argues that counsel was ineffective for failing to call the prosecution witnesses liars.  However, counsel testified at the *Ginther* hearing that he

thought it was better to argue that some of the witnesses were mistaken, rather than that they were all lying. (*Id.* at pp. 14, 55).  Counsel testified that it was his belief that "[i]f you call everybody in the court room a liar but yourself, the chances of a jury believing that you're the only one telling the truth is negligible.  And I learned trying cases, the least amount of people you call a liar the better off you're going to be." (*Id.* at p. 55).  Counsel believed that it was a more gentle way to handle Johnson by saying that he was wrong, rather than that he was a liar.  Counsel testified that he did, in fact, call Antonio Edwards a liar at trial. (*Id.*).

Defense counsel's decision to argue that Johnson was mistaken, rather than arguing that Johnson had perjured himself, was a reasonable trial strategy that defeats Petitioner's ineffective assistance of counsel claim. *See Matista v. U.S.,* 885 F. Supp. 634, 638-39 (S.D.N.Y. 1995).

Petitioner next contends that counsel was ineffective for allowing Antonio Edwards' allegedly perjured testimony that he had known Petitioner for nine months prior to the shooting to go uncorrected or to impeach it with prison records which would have showed that Petitioner was in prison during this time period.

Counsel testified at the *Ginther* hearing that he did not alert the court about Edwards' alleged perjury about knowing Petitioner for nine months prior to the shooting, because it was possible that Edwards was simply wrong, not lying.  Counsel further testified that he believed that it was better to attack Edwards' credibility by bringing in the testimony of a police officer, Ahmed Haidar, to show that it was Petitioner's brother,

26

and not Petitioner, as Edwards had testified, who had been arrested with Edwards in a drug raid of the house on Eureka Street three days prior to the shooting.  Counsel also brought out testimony that Edwards had been seen by a clinical psychologist and had basically lied to everyone. (*Id.* at pp. 35-41).  Moreover, a review of counsel's closing argument shows that counsel did attack Edwards' testimony by bringing up the fact that Petitioner had been in prison up to two months prior to the shooting. (Tr. 7/15/2002, p. 27).

With respect to counsel's failure to object to the allegedly perjured testimony of Antonio Edwards, Petitioner's claim fails because he has failed to show that the government knowingly used perjured testimony in this case or that this testimony was material to Petitioner's conviction. *Monroe v. Stegall,* 197 F. Supp. 2d at 760.

To the extent that Petitioner claims that counsel failed to adequately impeach Edwards with his testimony about having been acquainted with Petitioner for nine months prior to the shooting, the Court notes that Petitioner's counsel extensively impeached Edwards on a number of points, including the fact that he had initially named Sol Bryant as the shooter, that another person named Amir Ross had also named Sol Bryant as the shooter, that Edwards was testifying against Petitioner in exchange for a plea bargain and sentence reduction, and that Edwards had been mistaken or lying about Petitioner being with him at the house on Eureka Street during a drug raid that took place three days prior to the shooting.  Counsel's failure to impeach Edwards about knowing Petitioner for nine months prior to the shooting did not undermine confidence in

27

outcome of the case, since a variety of other impeachment evidence was admitted in this case. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 676-77 (E.D. Mich. 2006).

Petitioner next contends that counsel was ineffective for failing to move for the exclusion of Petitioner's aliases from evidence pursuant to M.R.E. 404(b). The Michigan Court of Appeals, however, indicated that evidence of Petitioner's aliases was admissible pursuant to M.R.E. 404(b) for the purpose of rebutting Petitioner's misidentification defense. *Wagner,* No. 245091, Slip. Op. at 3-4. Because the Michigan Court of Appeals determined that such "other acts" evidence was admissible, counsel was not ineffective for failing to object to its admission. *See Pearl v. Cason,* 219 F. Supp. 2d 820, 828-29 (E.D. Mich. 2002).

Although unclear, it appears as though Petitioner also claims that counsel was ineffective for failing to move for the suppression of his four prior felony convictions for unlawfully driving away an automobile (U.D.A.A.) from June of 1991, Attempted U.D.A.A. from September of 1991, Conspiracy to Commit U.D.A.A. from August of 1992 and Larceny from a Motor Vehicle from January of 2002. Assuming that counsel was ineffective for failing to move for the suppression of these convictions pursuant to M,R.E. 609, Petitioner is unable to show that he was prejudiced, so as to be entitled to habeas relief, in light of the fact that two witnesses testified that he committed the crimes charged here. *See James v. United States,* 217 Fed.Appx. 431, 436-37 (6th Cir. 2007).

Petitioner next contends that counsel was ineffective for failing to object to the prosecutor's acts of taunting, insulting, and even touching Petitioner during her cross-

28

examination of Petitioner.  Counsel testified at the *Ginther* hearing that he did not object to the prosecutorial misconduct because he initially thought that it was a mistake when the prosecutor touched Petitioner.  When counsel realized that the prosecutor's actions were intentional, counsel believed that he could use the prosecutorial misconduct to show that Petitioner was not that bad of a person, as the prosecution was suggesting, because a violent person would have struck back at the prosecutor. (*Id.* at pp. 44-45).  Counsel, in fact, pointed out in his closing argument that Petitioner had not reacted violently to the prosecutor's taunting and insults, as a person accused of a violent act would be expected to do. (Tr. 7/15/2002, pp. 25-26).

Because counsel had sound tactical reasons for not objecting to the prosecutorial misconduct, Petitioner is unable to establish that counsel was ineffective for failing to do so. *See Ege v. Yukins,* 380 F. Supp. 2d 852, 882 (E.D. Mich. 2005); *aff'd in part and rev'd in part on other grds,* 485 F.3d 364 (6th Cir. 2007).

Petitioner also argues that trial counsel was ineffective for failing to object to the prosecutor's misconduct in introducing evidence of Petitioner's involvement in unrelated murders.  To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different.  *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).  Because the Court has already determined that the prosecutor's questions about Petitioner's involvement in these unrelated homicides did

not deprive Petitioner of a fundamentally fair trial, Petitioner is unable to establish that he was prejudiced by counsel's failure to object. *Slagle,* 457 F. 3d at 528.

Petitioner also argues that trial counsel was ineffective for failing to object to the prosecutor questioning Petitioner about Mr. Gamich's out-of-court statement.  As mentioned when discussing Petitioner's Confrontation Clause claim above, Gamich's statement was admitted for a nonhearsay purpose and did not violate Petitioner's right to confrontation.  Because the admission of Gamich's extrajudicial statement did not violate the Confrontation Clause, counsel was not ineffective for failing to object to its admission on this basis. *See e.g. U.S. v. Johnson,* 581 F. 3d 320, 328 (6th Cir. 2009).

Petitioner next contends that defense counsel's closing argument was deficient.

While the right to effective assistance of counsel extends to closing arguments, counsel nonetheless has wide latitude in deciding how best to represent a criminal defendant, and deference to a defense counsel's decisions in his or her closing argument is particularly important because of the broad range of legitimate defense strategies at that stage. *Yarborough v. Gentry,* 540 U.S.1, 5-6 (2003).  Judicial review of a defense attorney's summation must be highly deferential and is "doubly deferential when it is conducted through the lense of federal habeas." *Id.*  By candidly acknowledging a client's shortcomings, a defense attorney may be able to build credibility with a jury and persuade it to focus on the relevant issues in the case. *Yarborough,* 540 U.S. at 9.

Counsel made a lengthy closing argument. (Tr. 7/15/2002, pp. 25-43).  In his closing, defense counsel pointed out that Petitioner had not reacted violently to the

30

prosecutor's taunts and insults, as a murderer would be expected to do. Counsel pointed out that Antonio Edwards and Amir Ross had initially named Sol Bryant as the shooter, not Petitioner. Counsel accused Edwards of lying on a number of issues. Counsel pointed out that none of the police ever showed pictures of Petitioner's brother to either Thelyus Johnson or Antonio Edwards to see if either man would identify Petitioner's brother as the shooter. Counsel pointed out that Ahmad Haidar testified that it was Petitioner's brother, and not Petitioner, who was arrested in the drug raid with Edwards three days prior to the shooting. Counsel noted the discrepancies in Johnson's description of his assailant and Petitioner's appearance in the photo showup.

Although counsel brought up that Petitioner was a "bad man," a car thief, and a man who "got his Phd in crime," he noted that anyone with such a record should have learned in prison how to do a murder properly, which would not involve leaving any witnesses alive, as had happened in this case. Counsel further pointed out that Edwards was testifying in exchange for a plea bargain. Counsel also brought out the fact that Johnson testified that Petitioner shot Moss twice with a .25 caliber weapon, but that the medical examiner testified that four bullets were recovered from the victim's head. Counsel further pointed out that an expert testified that the bullets recovered were from a .357 caliber weapon and perhaps a .22 caliber weapon, but that none recovered was from a .25 caliber weapon.

A review of defense counsel's closing argument shows that he thoroughly and effectively challenged the prosecution's evidence in this case. Although counsel brought

31

up Petitioner's prior convictions for car theft and his subsequent incarcerations, he did so to show that Petitioner had neither the inclination nor the experience to actually murder someone.  By candidly acknowledging a client's shortcomings, a defense attorney may be able to build credibility with a jury and persuade it to focus on the relevant issues in the case. *Yarborough,* 540 U.S. at 9.

Petitioner failed to show that counsel's disparaging remarks about him during closing argument were not part of a strategic choice designed to establish some degree of credibility with the jury; therefore, his ineffective assistance of counsel claim fails. *See e.g. Cordova v. Johnson,* 993 F. Supp. 473, 537-39 (W.D. Tex. 1998).  Moreover, even if counsel was wrong about the number of guns used in the killing, as Petitioner suggests, counsel nevertheless correctly argued that no .25 caliber was ever recovered from the crime scene, so as to impeach Johnson's testimony that a .25 caliber weapon was used.

In his eighth claim, Petitioner contends that appellate counsel was ineffective for failing to raise on direct appeal, claims that the prosecutor had engaged in improper conduct by introducing evidence of unrelated murder charges against Petitioner; by the introduction of perjured testimony; that Petitioner's right to confrontation had been violated by the introduction of Mr. Gamich's out-of-court statement; and, that trial counsel was ineffective for failing to object to the prosecutorial misconduct and the introduction of Mr. Gamich's out-of-court statement.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).

32

However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). This Court has already determined that these claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in her handling of Petitioner's direct appeal.

### F. Claim # 5. The cumulative errors claim.

Petitioner alleges that he was deprived of a fair trial because of cumulative error. The Sixth Circuit noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F. 3d 416, 447 (6th Cir. 2002). Therefore, Petitioner is not entitled to habeas relief on his cumulative errors claim. *Id.; See also Salters v. Palmer,* 271 F. Supp. 2d 980, 992 (E.D. Mich. 2003).

### IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different

33

manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

A certificate of appealability is denied because Petitioner failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although this Court denies a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). A certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional righ; but a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.

Although jurists of reason would not debate this Court's resolution of Petitioner's

34

claims, the issues are not frivolous.  Therefore, an appeal could be taken in good faith;

Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  <u>ORDER</u>

The Petition for Writ of Habeas Corpus is DENIED.

A Certificate of Appealability is DENIED.

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

**IT IS ORDERED.**

  S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  July 30, 2013

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 30, 2013.

S/Carol A. Pinegar
Deputy Clerk

35